IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Manual Galvan,                    )
                                  )
            Plaintiff,            )
                                  )
     v.                           )    No. 04 C 4003
                                  )
Thomas Norberg, et al.,           )
                                  )
            Defendants.           )

## MEMORANDUM OPINION AND ORDER

After this Court's March 17, 2006 entry of the final pre-
trial order ("FPTO") establishing the game plan for the trial of
this action brought by Manual Galvan ("Galvan") against the City
of Chicago ("City") and three of its police officers, the parties
have briefed the motions in limine that were submitted as part of
the FPTO and thereafter. With that briefing now having been
completed, all of the motions are ripe for decision.

### Galvan's Motions

Galvan's initial motion seeks to bar defendants from
introducing any evidence or referring to the immigration status
of his twin brother Jose Galvan ("Jose"). Jose's name comes into
the case because at the time of Galvan's arrest he was using
Jose's driver's license because his own had been revoked. Hence
he was arrested, processed and criminally charged as "Jose
Galvan" rather than under his own name.

Defendants' emphasis on the matters referred to in the last
two sentences--which are of course relevant--does not support the

non sequitur that the fact of Jose's immigration status should somehow enter the picture as well. Hence Galvan's motion is granted.

Galvan had later filed another motion seeking to bar any testimony or evidence as to his prior contacts with the criminal justice system. That motion was granted, when presented on April 27, for the reasons stated orally by this Court.

## Defendants' Motions

Defendants initially presented a package of eight motions in limine contemporaneously with the parties' joint submission of the proposed FTPO (those motions will be dealt with seriatim, in each instance employing the caption used by defendants). Then on March 28 defendants submitted an additional motion in limine, which will be dealt with immediately following the discussion of the first group.

1. <u>Evidence, argument or comments relating to unlawful detention after arrest and unlawful detention based upon unreasonable delay in the testing of controlled substances.</u>

In response to this motion, Galvan's counsel makes it clear that no contention of an untimely initial hearing is being advanced--instead the argument is that the state court's probable cause finding was "based upon false and fallacious information that the Defendant police officers gave to the Court" when they characterized as cannabis what were obviously (as Galvan would

2

have it) two bales of hay.[1] Defendants' reply, while acknowledging the adverse holding in Haywood v. City of Chicago, 378 F.3d 714, 719 (7th Cir. 2004) that "a fraudulent complaint cannot provide the sole basis for a finding of probable cause," asserts that there were also two plastic baggies (the smaller of which was later tested and found positive for cannabis) discovered in the cab of the truck that Galvan was driving.

But that is really a red herring. As the transcript that defendants have themselves attached as Ex. A to their motion reflects, the Assistant State's Attorney referred only to the officers' purported recovery of "one hundred thousand grams of cannabis from the vehicle; estimated street value of six hundred sixty-one thousand dollars"--what Galvan's charge of fraudulent representations characterizes as the bales of hay. Nothing was said at that time about any other basis for the probable cause determination. It thus appears that defendants' post hoc, ergo propter hoc argument should not have been made in good conscience. Their motion is denied.

2. Evidence of prior lawsuits and/or citizens' complaints against defendants and any non-defendant police witnesses should be excluded.

Both sides agree that such "other acts" evidence is barred

---

[1]This Court is not of course making any findings in that respect. What is decided here instead is that the issue is one for the factfinding jury, rather than one of taking the relevant evidence away from the jury.

3

under Fed.R.Evid. ("Rule") 404(b) if it is offered to show a defendant's purpensity to act in the same way on the occasion at issue in this case. But having so agreed, and with both sides having cited en route the same case (United States v. Zapata, 871 F.2d 616 (7th Cir. 1989)), Galvan's counsel does not explain how and why the prior CR charges against defendant officer Allen Lucas (more than 100 of them!!) fit the standard announced in Zapata and like cases, so as to come within the numerous exceptions to Rule 404(b).

Accordingly the motion is granted at this point. If however Galvan is able at trial to provide a predicate for the admissibility of such evidence after having notified defense counsel and this Court of such predicate at least two weeks before trial, a fresh look at the question may be taken at that time.

## 3. Evidence of City of Chicago Police Department General Orders, Rules and Regulations

Galvan is certainly correct in urging the relevance of defendants' claimed violations of City's Police Department's General Orders, Rules and Regulations. Although any such asserted violations do not as such equate to a constitutional violation, they may bear (for example) on Galvan's claim that defendants' actions were wilful and wanton--a subject of potential relevance to the issue of punitive damages and, perhaps, to Galvan's state law claims.

4

Accordingly this motion is denied. It is however anticipated that defendants will proffer an appropriate limiting jury instruction on this subject.

4. <u>Bar any testimony or evidence suggesting that the individual defendants may be indemnified by the City of Chicago for any compensatory damages returned against them</u>.

This motion presents a mixed bag. Defendants urge that (as with evidence of insurance coverage in personal injury cases) such evidence as to indemnification should be avoided for "deep pocket" reasons.[2] It is true that if and when a jury finds a police officer responsible in damages for his or her conduct, such silence on the subject of the officer's indemnification by City carries with it the possibility that the full damages sustained by a plaintiff may not be awarded because of the jury's concerns as to an officer's limited resources. On balance, however, it seems reasonable to treat the risk of a "deep pocket" award as a consideration outweighing that prospect, just as defendants ask.

To his credit, Galvan's counsel confirms that he "does not

---

[2]It should be recognized, though, that the rule barring evidence as to insurance does not provide a perfect analogy. In real world terms that rule involves a fiction, because everyone is really aware that people generally carry liability insurance (indeed, as to the coverage against automobile-related liability, such coverage is mandated by law). That being so, silence on that subject at trial does not necessarily remove the subject from the jury's consciousness. By contrast, the existence of indemnification in the present context is certainly not a matter of common knowledge.

5

intend to elicit any testimony or produce any evidence suggesting that the individual Defendants need to be indemnified by the City." But Galvan is correct in going on to state that if defendants themselves inject the issue of their claimed inability or limited ability to pay an award, evidence of their right to indemnification by the City will become relevant.

Punitive damages pose a somewhat separate problem. They do not of course create a right of indemnification, and once again it cannot be known what factors may enter into a jury's quantification of such damages if they are to be awarded. But defense counsel should be aware that if they plan to apprise the jury of the fact that the individual officers will have to bear such damages out of their own pockets, fairness would require that the jury also be informed of the true situation (indemnification) as to compensatory damages.

5. Adducing at trial any testimony or evidence or arguing to the jury that police officers in general, and in this case, conspire, cover-up or lie for their colleagues through some form of code of silence.

As to this motion, Galvan correctly responds that evidence or argument of this type can go to the issue of the bias or motivation of witnesses. This is a matter that calls for Rule 403 balancing, so that the blanket motion in limine is denied for now, without prejudice to the reassertion of any objections on this score in the context of specific evidence when proffered at trial.

6

6. Any testimony, evidence, argument or comments regarding other events concerning allegations of police misconduct.

Here Galvan interposes no objection to the motion. It is granted.

7. Bar any witnesses not previously disclosed by plaintiff during discovery.

In this respect Galvan seeks to add a single witness: Arnulso Moya ("Moya"), identified as the owner of the plastic wrap that was in the truck that Galvan was driving at the time of his arrest. As Galvan explains, the potential relevance of Moya's testimony was unknown until defendants identified the plastic wrap as an exhibit in the FPTO, thus suggesting that the presence of the plastic wrap would be urged by defendants as purported evidence of narcotics trafficking.

It is somewhat unclear from Galvan's submission what testimony he would propose to offer by way of explanation of the presence of that material in the truck. But depending on such explanation, Moya's testimony as to the use of such material may well be relevant. Accordingly the motion to bar him as a witness is denied, subject to its possible renewal in the matrix provided by the trial testimony.

8. Exclusion of witnesses.

This motion has also not been objected to by Galvan. It too is granted (see Rule 615).

7

## Defendants' Additional Motion in Limine

This motion relates to Galvan's proposed introduction of nine color photographs depicting a Nativity scene, sought to be introduced to bolster his evidence that the two bales of hay found in the truck had their origin in a Nativity play at St. Wenceslaus Catholic Church during the Christmas holidays. According to Galvan, Juan Luna (who was in the truck with him) was taking the bales of hay back to a farm in Beecher, Illinois to feed the horses, after the Christmas pageant had been completed and the scene had been disassembled (so that the hay was no longer needed).

Defendants are right, however, in arguing that not all nine photographs (Galvan's Exs. 74-82) are needed for that purpose. Indeed, it is unclear to this Court from the photographs precisely where the hay is depicted. Galvan will be required to pick and choose among the photographs, indicating which are indeed demonstrative in support of his contention, and limiting the actual exhibits to at most two or three. With that limitation, the motion in limine for a total bar of the photographs is denied.

Milton I. Shadur
Senior United States District Judge

May 10, 2006
C:\WPTEXT\galvanmoo.wpd

8