IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MANUAL GALVAN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04 CV 4003 |
| | ) | Judge Shadur |
| THOMAS NORBERG and ALAN LUCAS, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION FOR JUDGMENT
AS A MATTER OF LAW ON LIABILITY**

Defendants, Thomas Norberg and Alan Lucas, pursuant to Rule 50 of the Federal Rules of Civil Procedure, and for their Motion for Judgment as a Matter of Law on Liability, state as follows:

**I.      EVIDENCE ELICITED DURING TRIAL**

On December 30, 2002, Defendants were working a 4pm to 12pm shift at the 17th District. Shortly before the shift began, Lucas received an anonymous telephone tip that, between 4pm and 6pm, a shiny clean, black, trick-ride pick up truck with two male occupants would be driving south on Pulaski near Irving Park; a large amount of marijuana would be in the bed of the truck. The tipster used slang that Lucas recognized as that used in gang activity. Also, 17th District officers make many drug arrests at that intersection. While there has been abundant evidence supporting the fact that Lucas received the tip, Plaintiff has presented <u>absolutely no evidence</u> that there was no tip. Plaintiff certainly implied and suggested that there was no evidence, and impeached Defendants on some points, but has presented no affirmative substantive evidence in support of his position.

Lucas shared the tip with Defendants' watch commander, Lt. Porebski. Lt. Porebski directed Defendants to take further action with regard to the tip. At Irving and Pulaski, Defendants saw a truck matching the tipster's description driving in the direction and location predicted by the tipster. Defendants curbed the truck; Plaintiff was the driver, and Juan Luna was the passenger. Defendants saw two small bags of what they believed to be marijuana fall to the floor of the cab. They arrested Plaintiff and Luna, and conducted an inventory search of the bed of the truck. In the rear, Defendants found two bales of a moist, green plant material wrapped in plastic wrap. Defendants felt this material, smelled this material, and burned this material, and concluded that it was marijuana. Defendants transported the arrestees and the truck to the 17th District.

At the 17th District, Defendants again examined, with Porebski, the bales in the bed of the truck. Porebski even consulted the Drug Identification Bible before approving the felony possession of marijuana charges. The following morning, the Circuit Court conducted a *Gerstein* hearing, found probable cause to detain the arrestees, and set bond. The Illinois State Crime Lab subsequently tested the materials recovered from the truck, and found the two small bags to be positive for marijuana, and the two large bales to be negative for marijuana. Neither Defendant received the Lab's findings. On January 17, 2003, the State's Attorney's Office filed a writ for Galvan's appearance in court on January 21, 2003. On that date, which was before Galvan's originally-scheduled hearing date of January 23, 2003, the prosecutor moved for *nolle prosequi*. The arrestees were not released until after the date of their previously scheduled preliminary hearing, January 23, 2003.

## II. STANDARD FOR JUDGMENT AS A MATTER OF LAW

"'[I]n every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'" *Ford v. Childers*, 855 F.2d 1271, 1274 (7th Cir. 1988) (*emphasis in original*) (*quoting Improvement Co. v. Munson*, 81 U.S. 442 (1872). A Rule 50 movant is entitled to judgment as a matter of law "if a reasonable person could not find that the evidence supports a decision for a party on each essential element of the case, viewing the evidence in the light most favorable to the non-movant." *Campbell v. Peters*, 256 F.3d 695, 699 (7th Cir. 2001).

## III. ARGUMENT

Pursuant to the Final Pretrial Order entered March 17, 2006, the agreed contested issues of law pertaining to liability are:

1. Whether defendants Norberg and Lucas had reasonable suspicion to stop the truck plaintiff was driving.

2. Whether defendants Norberg and Lucas arrested plaintiff without probable cause in violation of his Fourth Amendment rights; and

3. Whether the individual defendants are entitled to qualified immunity.

Defendants are entitled to judgment as a matter of law on each of these issues.[1]

### a. **Defendants Had Reasonable Suspicion To Detain Plaintiff.**

An officer may conduct an investigatory stop if the officer can "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. State of Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880 (1968). The

---

[1] To be sure, Plaintiff has hinted at other avenues of liability he would like to travail. For example, Plaintiff has implied that Norberg's conduct with regard to reporting the negative test results was wrongful. Norberg denied receiving the test results, but even if he received them and failed to act to secure Plaintiff's release, there is no constitutional violation. *Garcia v. City of Chicago*, 24 F.3d 966, 971 (7th Cir. 1994).

3

reasonableness of a *Terry* stop is governed by an objective test, to wit: "would the facts available to the officer at the moment of the seizure…warrant a man of reasonable caution in the belief that the action was appropriate?" *Id*. at 21-22, 1880. An anonymous tip can be enough to create reasonable suspicion; to determine whether an anonymous tip has given rise to reasonable suspicion, "courts examine the amount of information given, the degree of reliability, and the amount of police corroboration." *U.S. v. Price*, 184 F.3d 637, 640 (7th Cir. 1999). Where an informant is proved right about some facts, the informant is probably right about other facts, including allegations of criminal activity. *Alabama v. White*, 496 U.S. 325, 331-32, 110 S.Ct. 2412, 2417 (1990). An important element for a court to consider when evaluating an anonymous tip is whether the tipster accurately predicted the alleged criminal's future behavior. *Id*. at 332, 2417.

In *White*, the police department received an anonymous call that the defendant would be leaving a certain apartment building at a certain time in a brown Plymouth station wagon with a broken taillight, would proceed to a motel, and would be transporting cocaine. *Id*. at 327, 2414-15. Officers corroborated the tip with regard to the defendant's movements, and detained the defendant before she arrived at the motel. *Id*. The Supreme Court noted that the threshold for establishing reasonable suspicion is lower than that for probable cause. *Id*. at 330, 2416. While not every detail of the tip was verified, the officers did corroborate that a woman left the apartment building within the time frame the tipster provided, entered the car the tipster described, and headed in the direction the tipster stated. *Id*. at 331, 2416-17. The Court acknowledged that anyone could have described the car and informed officers that it was in front of the motel; but:

> What was important was the caller's ability to predict respondent's *future behavior*. Because it demonstrated inside information—a special familiarity with respondent's affairs. The general public would have had no way of knowing that respondent would shortly leave the building, get in the described car, and drive the most direct route to Dobey's Motel. Because only a small number of people are generally privy to an individual's itinerary, it is reasonable for police to believe that a person with access to such information is likely to also have access to reliable information about the individual's illegal activities. When significant aspects of the caller's predictions were verified, there was reason to believe not only that the caller was honest, but also that he was well informed, at least well enough to justify the stop.

*Id*. at 332, 2417 (*emphasis in original*).

The Supreme Court revisited anonymous tips in a *Terry* context is *Florida v. J.L.*, 529 U.S. 266, 120 S.Ct. 1375 (2000). There, the Court held that an anonymous tip (that a person wearing a plaid shirt at a certain bus stop had a gun) was insufficient to give rise to reasonable suspicion because the caller provided no predictive information. *Id*. at 271, 1379. The *J.L.* Court contrasted and explained *White*, where, "Only after police observation showed that the informant had accurately predicted the woman's movements, we explained, did it become reasonable to think the tipster had inside knowledge about the suspect and therefore to credit his assertion about the cocaine." *J.L.* at 270, 1378.

In the present case, the evidence indisputably establishes that Defendants had reasonable suspicion to stop Plaintiff's car as a matter of law. The evidence is that Lucas received an anonymous tip that a black, shiny clean, "trick ride" pick up truck, with two males would be driving southbound on Pulaski near Irving Park between 4:00 and 6:00pm; the truck would be carrying hundreds of pounds of marijuana. The tip was detailed and predicted future movement. Lucas told Norberg and Porebski about this tip before taking any action. While conducting

surveillance near Pulaski and Irving Park, Defendants saw a truck that fit the caller's description, at the time and place predicted by the caller, and going in the direction predicted by the caller. Defendants' surveillance confirmed many of the details and predictions provided by the caller. Because the caller was correct about other facts, he was likely to be correct about his reports of illegal activity. The tip Lucas received is squarely within the variety approved in *White*, and Defendants had reasonable suspicion to curb the truck. Therefore, Defendants request that this Court enter judgment as a matter of law on Plaintiff's claim that he was detained without reasonable suspicion.

      **b.**    **Defendants Had Probable Cause To Arrest Plaintiff.**

The existence of probable cause is an absolute defense to a wrongful arrest claim. *Williams v. Rodriguez*, 509 F.3d 392, 398 (7th Cir. 2007). "If a case involves a question of whether probable cause existed to support an officer's actions, the case should not be permitted to go to trial if there is any reasonable basis to conclude that probable cause existed." *Eversole v. Steele*, 59 F.3d 710, 717-18 (7th Cir. 1995) (*quoting McDonnell v. Cournia*, 990 F.2d 963, 968 (7th Cir. 1993)). "A police officer has probable cause to arrest an individual when the facts and circumstances that are known to him reasonably support a belief that the individual has committed, is committing, or is about to commit a crime." *Holmes v. Village of Hoffman Estates*, 511 F.3d 673, 679 (7th Cir. 2007) (*cites omitted*). "Probable cause is not proof beyond a reasonable doubt, or even proof by a preponderance of evidence." *Braun v. Baldwin*, 346 F.3d 761, 766 (7th Cir. 2003). A court is not to evaluate probable cause as an omniscient observer with 20/20 hindsight, but rather must view the facts as a reasonable person in the position of the officer would view them. *Williams* at 399. The reasonableness "turns on what the officer knew, not whether he knew the truth or whether he should have known more," and the officer's beliefs

need not be correct or even more likely true than false. *Reynolds v. Jamison*, 488 F.3d 756, 765 (7th Cir. 2007). It is a § 1983 plaintiff's burden to prove the unreasonableness of the officer's belief, not the officer's burden to establish reasonableness. *Tangwall v. Stuckey*, 135 F.3d 510, 519 (7th Cir. 1998). The officer need not have probable cause to arrest the arrestee for the crime with which he was eventually charged, provided the officer had probable cause to make an arrest for any offense.[2] *Williams* at 399. Furthermore, an officer with probable cause to make an arrest is under no constitutional duty to investigate claims of innocence. *Reynolds* at 768. "Many putative defendants protest their innocence, and it is not the responsibility of law enforcement officials to test such claims once probable cause has been established." *Eversole* at 724.

Defendants had probable cause to arrest Plaintiff based on the suspected marijuana they saw in the cab of the truck being driven by Plaintiff. While Plaintiff denies the marijuana was his, he was unable to testify that Luna did not have the marijuana, and did not testify that the marijuana was planted by the officers. Thus, there is no issue of fact with regard to whether Defendants had probable cause to arrest Plaintiff. Admittedly, Plaintiff was charged not only with possession of the smaller bags of suspected marijuana, but possession of all the suspected marijuana. However, because there was undoubtedly probable cause for Plaintiff's arrest for the smaller portions, probable cause also exists for the closely related charge of possession of the greater amount of possession of marijuana.

Defendants also had independent probable cause to arrest Plaintiff for the bales in the bed of the truck. The bales were described by Defendants, George and Porebski as moist, green plant material wrapped in dark plastic. Each Defendant smelled the smoke emitted by the substance

---

[2] It is a crime in Illinois to knowingly possess any amount of marijuana. 720 ILCS 550/5. A person may be guilty of this crime, even if he did not possess marijuana, under the doctrine of constructive possession, which provides that a person who has the power and intention to exercise dominion and control over an object, solely or jointly, may be guilty of possessing that object. *U.S. v. Hunte*, 196 F.3d 687, 692 (7th Cir. 1999).

7

when burnt, and testified that the aroma was similar to marijuana.[3] Porebski approved the charges after consulting his Drug Identification Bible. That these bales later tested negative is irrelevant; such information was not available to the Officers at the time of arrest, and the Court is not to evaluate probable cause with omniscience. *See Ochana v. Flores*, 347 F.3d 266, 272 (7th Cir. 2003) (holding there was no abuse of discretion in barring evidence of a negative lab result and disposition of the underlying criminal case because those facts were not known to the arresting officers at the time of arrest). Additionally, Plaintiff's purported explanation for the presence of the hay does not help Plaintiff's case; rather, the outlandishness of the explanation (that the hay belonged to the passenger who intended to drive it Downstate Illinois to feed his horses) actually contributes to Defendants' determination of probable cause. *See Ochana* at 271-72 (officers were entitled to consider the substance's packaging, arrestee's behavior, and the arrestee's failure to give a coherent explanation for the substance in determining whether probable cause exists). Moreover, Defendants were under no obligation to investigate this far-fetched explanation. In fact, the Officers were under no duty even to test the suspected marijuana. *Arizona v. Youngblood*, 488 U.S. 51, 52, 109 S.Ct. 333, 337-38 (1989). And, even when the bales did test negative for marijuana, the prosecutor was under no obligation to dismiss the charges. *Garcia v. City of Chicago*, 24 F.3d 966, 971 (7th Cir. 1994). Upon examination of the relevant facts, and disregarding the lab results, the source of the hay, the destination of the hay, etc., there can be no doubt that the Defendant Officers had probable cause to arrest Plaintiff, and directed verdict is thus appropriate.

---

[3] *See Garcia v. City of Chicago*, 24 F.3d 966, 970 (7th Cir. 1994), where the Court stated that finding a white powder in a person's possession provides probable cause to arrest that person for possession of cocaine. (*citing U.S. v. Potter*, 895 F.2d 1231, 1234 and n. 1 (9th Cir. 1990)

### c.     Defendants Are Protected By Qualified Immunity.

Courts have recognized that a person's right to damages for violations of constitutional rights conflicts with the need to protect public officials from liability in performing discretionary duties. *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038 (1987). "Our cases have accommodated these conflicting concerns by generally providing government officials performing discretionary functions with a qualified immunity..." *Id*. The qualified immunity doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096 (1986). The doctrine of qualified immunity protects officers who reasonably but mistakenly believe their actions are lawful. *Anderson* at 641, 3034. In the context of probable cause, "Qualified immunity applies not only to those officials who correctly determine that probable cause to arrest exists, but also to those governmental officials who reasonably but mistakenly conclude that it does." *Spiegel v. Cortese*, 196 F.3d 717, 723 (7th Cir. 2000). A police officer will be immune to probable cause claims unless "'it is obvious that no reasonably competent officer' would have believed that there was probable cause to arrest." *Spiegel* at 723 (*quoting Malley* at 341). Qualified immunity not only serves to protect a defendant from liability, but also serves to protect a defendant from the burden of standing trial; thus, courts should determine qualified immunity before trial. *Saucier* at 201, 2156. Although, in an ideal case, qualified immunity will save officers the pains of trial, the protection is nonetheless valuable at this stage of the proceedings. Recognizing Defendants' immunity now will spare them the agony of awaiting the verdict, and avoid the risk that the jury may return a verdict contrary to the law.

It is a plaintiff's burden to establish the inapplicability of qualified immunity, and to do so, he must: (1) show a violation of a constitutional right; and (2) if a constitutional right was

violated, show that the "right was clearly established at the time of the alleged violation." *Reynolds* at 764.[4] The court must decide "whether a reasonably competent official would know that the conduct was unlawful in the situation he confronted." *Mustafa v. City of Chicago*, 442 F.3d 544, 548 (7th Cir. 2006). The right alleged to have been violated must be sufficiently clear that a reasonable officer would know that his actions violate that right. *Anderson*. "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Saucier* at 202, 2156-57. Where the law is open to interpretation, qualified immunity applies. *Mustafa* at 549.

In the present case, even if the Court concludes that Plaintiff has presented evidence that could support a finding that the Officers did not have reasonable suspicion or probable cause for their actions, qualified immunity applies because Defendants' mistaken belief that they had reasonable suspicion or probable cause was reasonable. As discussed above, the similarities between the tip Lucas received and the tip contemplated in *White* are striking. Here, Defendants investigated an anonymous tip about drug activity, corroborated the descriptive details provided by the tipster and the movements predicted by the tipster, and reasonably believed they had reasonable suspicion to stop Plaintiff's vehicle. Even if Defendants were mistaken in this belief, this mistake was reasonable in light of Supreme Court precedent. Similarly, if Defendants were mistaken in their belief that they had probable cause to arrest Plaintiff for possession of marijuana, their mistaken belief was reasonable. They saw two small bags of green plant material in the cab of the truck, which they (correctly) believed was marijuana. In the bed of the truck, they saw two bales of green plant material, which they (incorrectly) believed was marijuana. They even burned a portion of the bale in an effort to confirm their belief. And, Porebski, the

---

[4] Recent case law states this test is no longer mandatory, but still useful. *Pearson v. Callahan*. 129 S.Ct. 808, 818 (2009).

10

Officers' watch commander, agreed that the tip was good and agreed that the material found in the truck was likely marijuana. (*See Wagner v. Washington County*, 493 F.3d 833, 837 (7th Cir. 2007), where the court noted that a supervisor's agreement with the officers' assessment bolsters claim of qualified immunity). Clearly the justice system contemplates that officers might sometimes mistake an innocent substance for an illicit one; that is the reason for the existence of the Illinois Crime Lab. To the extent the Court determines that Defendants did not have reasonable suspicion and probable cause, their belief that they did was reasonable, qualified immunity applies, and judgment as a matter of law is appropriate on all Plaintiff's claims.[5]

## IV. CONCLUSION

WHEREFORE, Officer Thomas Norberg and Officer Alan Lucas respectfully request that this Honorable Court grant their Motion for Judgment as a Matter of Law on Liability, along with any further relief this Court deems equitable and just.

Respectfully Submitted,

OFFICER THOMAS NORBERG and OFFICER ALAN LUCAS

by\_\_\_s/ Michael S. McGrory_____
One of their attorneys

Alan L. Farkas
Michael S. McGrory
MADSEN, FARKAS & POWEN, LLC
20 S. Clark Street, Suite 1050
Chicago, Illinois 60603
(312) 379-3444
(312) 379-3443 fax

---

[5] Plaintiff may argue that probable cause was lacking because Defendants planted the marijuana in the cab; Plaintiff has provided no evidence in support of this contention. *See Heft v. Moore*, 351 F.3d 278, 283 (7th Cir. 2003).