IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MANUAL GALVAN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 04 C 4003 |
| | ) | |
| v. | ) | Hon. Milton I. Shadur, |
| | ) | Judge Presiding. |
| THOMAS NORBERT and ALAN LUCAS, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW**

NOW COMES the Plaintiff, Manual Galvan, by and through his attorneys, John P. DeRose & Associates, and in support of his Motion for Judgment as a Matter of Law states as follows:

### I. Standard of Review

The standard on a Rule 50 Motion for Judgment as a Matter of Law is whether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, is legally sufficient to support the verdict when viewed in the light most favorable to the non-movant. *Mutual Service Casualty Insurance Co. v. Elizabeth State Bank,* 265 F.3d 601, 612 (7th Cir. 2001). The applicable test is whether no rational jury could return a verdict for the non-movant. *Mathur v. Board of Trutees of Southern Illinois University,* 207 F.3d 938, 941 (7th Cir. 2000).

### II. Argument

#### A. Stop of the Vehicle

In order to stop a vehicle without a warrant, a police officer must have a reasonable suspicion to believe that a crime has been or is being committed by an

1

occupant of the vehicle. In determining whether an anonymous informant's tip establishes a reasonable suspicion on which to stop a vehicle without a warrant, the fact-finder must consider the totality of the circumstances. *Illinois v. Gates,* 462 U.S. 213 (1983). In the determination of reasonable suspicion, the following factors are considered highly relevant: the informant's veracity, reliability and basis of knowledge. *Id.* at 230. An anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity. *Id.*

In *Florida v. J.L.,* police officers received an anonymous tip that a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun. 120 S.Ct. 1375, 1377 (2000). Some time thereafter, the officers arrived at the bus stop and saw a black male wearing a plaid shirt. They stopped him, frisked him, and seized a gun off of his person. *Id.* In its analysis, the Court noted that the officers' suspicion that J.L. was carrying a weapon arose solely from the anonymous call and not from their own observations. *Id.* at 1378. The Court went on to state:

> "The reasonableness of official suspicion must be measured by what the officers knew before they conducted their search. All the police had to go on in this case was the bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about J.L."

*Id.* at 1379.

In *Alabama v. White,* the Supreme Court held that a tip from an anonymous informant, as corroborated exhibited sufficient reliability to justify the investigatory stop of the car. 110 S.Ct. 2412, 1217 (1990). The Court found particularly persuasive that the anonymous caller had predicted the defendant's future behavior by providing specific

2

details about defendant leaving a specific location at a specific time in a particular vehicle and would drive the most direct route to a certain motel. *Id.*

Here, Defendant Officers Lucas and Norberg testified that they stopped the vehicle that Galvan was driving because of an anonymous tip received by Officer Lucas. Although Norberg also testified that he pulled over the vehicle because of an "evasive move", both officers testified that they pulled over that their reason for stopping the vehicle was because it matched the description given by the alleged informant. However, the officers' testimony regarding the alleged anonymous call was wildly inconsistent.

Officer Lucas testified that he received the call at the beginning of his shift on December 30, 2002. He did not write down the information given during the call at any point, and he didn't tell anyone other than Officer Norberg about the call. Although he testified in his deposition that the caller told him there would be two Hispanic occupants in a truck (or van, as he stated several times during his testimony in court), at trial he testified that the caller only told him it would be "two dudes". Officer Lucas testified at one point that the caller stated that the two occupants would be between 25-30 years of age, and at another time he testified that they would be between 25-35 years of age. In contrast, Norberg testified in his deposition that Lucas told him the caller (who was not identified as male or female) said there would be one or two occupants in the car, and at trial he testified that Lucas told him there would be two occupants. After being cross-examined, he admitted that the only "remembered" that Lucas told him there were two occupants the week before trial when Lucas "refreshed" his recollection.

Furthermore, both Officer Lucas and Officer Norberg testified that they didn't tell their supervisors or brother officers about the anonymous call. However, Lieutenant

3

Porebski testified that Officer Lucas did tell him about the anonymous call and he directed him to follow-up with an investigation. Despite his testimony that Officer Lucas had told him about the call, Porebski could remember virtually none of the details about the caller and the information given by the caller, and he had absolutely no recollection of signing an affidavit in which the details of the anonymous call were recounted in Officer Lucas's exact words.

The vice case report that Lucas authored and signed (for both himself and Norberg) included almost no detail about the anonymous call other than the existence of the call itself and that the automobile would be carrying a large quantity of cannabis. There is no written record of the call whatsoever, and nobody other than Lucas spoke to the anonymous caller.

Even assuming, arguendo, that Officer Lucas did receive a call from an anonymous informant who related the most detailed description testified to by Lucas: that a clean black truck, "trick ride" or "half-trick ride" would be traveling southbound in the vicinity of Pulaski and Irving Park Road between four o'clock and five o'clock (or six o'clock) with two male occupants carrying a large quantity of cannabis, the Defendant officers still did not have reasonable suspicion to stop the vehicle. Officer Lucas testified that he had never spoken with the anonymous caller before, and accordingly, he had no way of knowing the caller's basis of knowledge or his reliability.

The information allegedly provided by the anonymous caller in this case does not approach the level of detail provided either in *J.L.* or *White*. The caller did not describe the occupants with any specificity, did not give a starting location of the vehicle or an ending location. The caller did not offer any explanation as to the origin of his

knowledge. The caller only described the vehicle and said that it would be traveling south on a very busy thoroughfare during rush hour. Further, the defendants did not observe any suspicious behavior on the part of Galvan or his occupant, and pulled over the vehicle based only on the alleged anonymous tip. Even giving credit to defendants' most specific version of the alleged anonymous call, the information therein did not alone give the officers reasonable suspicion to stop the vehicle. Therefore, Plaintiff requests that this Honorable Court enter judgment as a matter of law in favor of Plaintiff on his claim that he was detained without reasonable suspicion.

**B. Search of Vehicle and Arrest**

Even if the Defendants Lucas and Norberg had reasonable suspicion to stop the vehicle driven by Galvan on December 30, 2002, they did not then have authority to search the back of the truck and to arrest the Plaintiff.

The United States Supreme Court has held that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions." *Katz v. United States,* 389 U.S. 347, 357 (1967). While there is an exception for a search incident to a lawful arrest, the Supreme Court in *Chimel v. California,* 89 S.Ct. 2034, 2040 (1969) held that such a search may only include the "arrestee's person and the area 'within his immediate control' – construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence. *Id.* at 2040. Absent the possibility that an arrestee has a weapon within his reach or may be able to destroy evidence, the search-incident-to-arrest exception does not

5

apply, and the search is therefore unreasonable under the Fourth Amendment. *Arizona v. Gant,* 129 S.Ct. 1710, 1716 (2009).

Here, both defendant officers testified that at the time they searched the vehicle, Galvan and Juan Luna were already outside of the car. According to Lucas and Norberg, both men were being cooperative and gentlemanly. In fact, Lucas and Norberg did not even feel the need to handcuff Galvan and Luna as they presented no danger. They were standing on the street and were not in reach of anything inside the truck, let alone weapons or evidence. Galvan and Luna presented no safety risk to the officers and had no opportunity to destroy evidence.

Lucas and Norberg would suggest that the discovery of two small baggies of suspect cannabis in the cab of the vehicle gives them probable cause to search the rest of the vehicle. As with their testimony regarding the anonymous call, the officers' testimony regarding the discovery and recovery of those small baggies was inconsistent at best. They again contradicted each other, their own previous testimony, and their official reports of the arrest. Officers Lucas and Norberg could not seem to agree on the location of the baggies before they were recovered. They testified that the baggies were kicked over by the passenger-side door, but their written report stated that the baggies were kicked over to the driver-side door. Lucas stated that when he opened the passenger-side door, the baggies fell out of the car, one into his hand, and one on the ground. That account contradicted his previous testimony that they both fell to the ground, and Norberg's previous account that the baggies were recovered from the floor of the truck's cab after Galvan and Luna were removed from the truck.

However, even if this Honorable Court were able to credit the defendants with a particular version of the events that is in their most favorable light, according to *Arizona v. Gant,* they still did not have authority to search the bed of the vehicle given Galvan and Luna's inability to reach into the bed of the truck at any point during the stop. Because the officers' safety was not at risk and Galvan and Luna could not have destroyed any evidence that may have been in the bed of the truck, Plaintiff requests that this Honorable Court enter judgment as a matter of law in Plaintiff's favor on his illegal search and seizure and false arrest claims.

Lastly, this Honorable Court should enter judgment as a matter of law on Plaintiff's false arrest claim because defendants did not have probable cause to believe that the "plant material" in the back of the truck was cannabis. Officers Lucas and Norberg decided that the material was cannabis before even getting a good look, feel, and smell of the material. Although Lucas claims that the plant material had the distinct "pungent odor" of cannabis, such a claim presents an impossibility. Hay does not and cannot smell like cannabis. In their zeal to make a major drug bust for which they would receive at least informal accolades and for which the local media were called to witness, Officer Lucas and Norberg ignored all evidence that the material was not cannabis. Officer Norberg, Sergeant Casey, and Lieutenant Porebski all testified that they had their doubts that the material was cannabis and not hay, as Galvan repeatedly insisted, but they all dismissed their doubts at Officer Lucas's insistence. They deferred to Officer Lucas's opinion as he was an officer with vast experience in narcotics. Neither Officer Lucas nor Officer Norberg even bothered to contact any representative of St. Wenceslaus church, where Galvan and Luna insisted the hay had come from. As a result of the officers'

"mistake", Galvan spent 23 days in Cook County Jail.  Even after the laboratory results were delivered, three days after the arrest, neither of the officers, nor anyone else in the Chicago Police Department made any attempt to make sure Galvan was released from custody.  Because no reasonable person would believe the plant material in the bed of the truck was cannabis instead of hay, this Honorable Court should enter Judgment as a matter of law in Plaintiff's favor on his false arrest claim.

### III.  Conclusion

WHEREFORE, Plaintiff Manual Galvan, by and through his attorneys, John P. DeRose & Associates respectfully request that this Honorable Court enter Judgment as Matter of Law in Plaintiff's favor on all of his claims.

> Respectfully submitted,
>
> S/ John P. DeRose
>
> John P. DeRose

John P. DeRose & Associates
15 Spinning Wheel Road
Suite 428
Hinsdale, Illinois  60521
(630) 920-1111