IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MANUAL GALVAN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 04 C 4003 |
| | ) | |
| v. | ) | Hon. Milton I. Shadur, |
| | ) | Judge Presiding. |
| THOMAS NORBERG and ALAN LUCAS, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW
AND MOTION FOR A NEW TRIAL**

NOW COMES the Plaintiff, Manual Galvan, by and through his attorneys, John

P. DeRose & Associates, and in support of his Motion for Judgment as a Matter of Law

and Motion for a New Trial states as follows:

I.      BACKGROUND FACTS

Plaintiff Manual Galvan complained that he was subjected to an illegal search and

seizure when he the Defendant officers pulled him over while he was driving on

December 30, 2002.  The Defendant Officers claimed that they received an anonymous

call that a truck matching the one Galvan was driving would be carrying a large amount

of cannabis.  After Officers Norberg and Lucas pulled over the vehicle that Galvan was

driving, they searched the bed of the truck and found two bales of hay that they believed

to be cannabis.  Galvan and his passenger, Juan Luna were thereafter arrested, charged

with possession of cannabis in excess of 600,000 grams.  Galvan and Luna were detained

in Cook County Jail for 23 days before the charges were dropped and they were released.

Galvan then filed the instant lawsuit against Officers Lucas and Norberg.  After a trial,

the jury returned a verdict in favor of the Officers on both of Galvan's claims of illegal search and seizure and false arrest.

## II. RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

### A. Stop of the Vehicle

The standard on a Rule 50 Motion for Judgment as a Matter of Law is whether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, is legally sufficient to support the verdict when viewed in the light most favorable to the non-movant. *Mutual Service Casualty Insurance Co. v. Elizabeth State Bank,* 265 F.3d 601, 612 (7th Cir. 2001). The applicable test is whether no rational jury could return a verdict for the non-movant. *Mathur v. Board of Trutees of Southern Illinois University,* 207 F.3d 938, 941 (7th Cir. 2000).

In order to stop a vehicle without a warrant, a police officer must have a reasonable suspicion to believe that a crime has been or is being committed by an occupant of the vehicle. In determining whether an anonymous informant's tip establishes a reasonable suspicion on which to stop a vehicle without a warrant, the fact-finder must consider the totality of the circumstances. *Illinois v. Gates,* 462 U.S. 213 (1983). In the determination of reasonable suspicion, the following factors are considered highly relevant: the informant's veracity, reliability and basis of knowledge. *Id.* at 230. An anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity. *Id.*

In *Florida v. J.L.,* police officers received an anonymous tip that a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun. 120 S.Ct. 1375, 1377 (2000). Some time thereafter, the officers arrived at the bus stop and

saw a black male wearing a plaid shirt. They stopped him, frisked him, and seized a gun off of his person. *Id.* In its analysis, the Court noted that the officers' suspicion that J.L. was carrying a weapon arose solely from the anonymous call and not from their own observations. *Id.* at 1378. The Court went on to state:

> "The reasonableness of official suspicion must be measured by what the officers knew before they conducted their search. All the police had to go on in this case was the bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about J.L."

*Id.* at 1379.

In *Alabama v. White,* the Supreme Court held that a tip from an anonymous informant, as corroborated exhibited sufficient reliability to justify the investigatory stop of the car. 110 S.Ct. 2412, 1217 (1990). The Court found particularly persuasive that the anonymous caller had predicted the defendant's future behavior by providing specific details about defendant leaving a specified location at a specific time in a particularly described vehicle and would drive the most direct route to a certain motel. *Id.*

Here, Defendant Officers Lucas and Norberg testified that they stopped the vehicle that Galvan was driving because of an anonymous tip received by Officer Lucas. Although Norberg also testified that he pulled over the vehicle because of an "evasive move", both officers testified that their reason for stopping the vehicle was because it matched the description given by the alleged informant. However, the officers' description of the alleged anonymous call in their official police reports, in their previously given deposition testimony, and in their testimony before the jury was wildly inconsistent.

Officer Lucas testified that he received the call at the beginning of his shift on December 30, 2002. He did not write down the information given during the call at any point, and he did not tell anyone other than Officer Norberg about the call. Although he testified in his deposition that the caller told him there would be two Hispanic occupants in a truck[1], at trial he testified that the caller only told him it would be "two dudes". Officer Lucas testified at one point that the caller stated that the two occupants would be between 25-30 years of age, and at another time he testified that they would be between 25-35 years of age. In contrast, Norberg testified in his deposition that Lucas told him the alleged caller, who had not been identified to him as male or female said there would be one or two occupants in the car, and at trial he testified that Lucas told him there would be two occupants. During cross-examination, Norberg admitted that he didn't actually know what Officer Lucas told him about the occupants of the vehicle on December 30, 2002, but that Officer Lucas "refreshed" his recollection during trial preparation a week earlier that the alleged caller said there would be two occupants in the vehicle.

Furthermore, both Officer Lucas and Officer Norberg testified that they did not tell their supervisors or brother officers about the anonymous call. Incredibly, Lieutenant Porebski testified that Officer Lucas did tell him about the anonymous call and he directed him to "follow-up with an investigation". Despite his testimony that Officer Lucas had told him about the call, Porebski could remember virtually none of the details about the caller and the information given by the caller, and he had absolutely no recollection of signing an affidavit submitted in this cause approximately one year prior

---

[1] Interstingly, Officer Lucas referred to the vehicle discussed in the alleged anonymous call as a "van" on several occasions during his testimony before the jury.

to trial in which the details of the anonymous call were recounted in Officer Lucas's exact words.

The vice case report that Lucas authored and to which he affixed both his and Norberg's signatures included almost no detail about the anonymous call other than the existence of the call itself and that the automobile would be carrying a large quantity of cannabis. There is no written record of the call whatsoever, and nobody other than Lucas spoke to the anonymous caller.

Even assuming, *arguendo*, that Officer Lucas did receive a call from an anonymous informant who related the most detailed description testified to by Lucas: that a shiny clean black truck, "trick ride" or "half-trick ride" would be traveling southbound in the vicinity of Pulaski and Irving Park Road between four o'clock and five o'clock or six o'clock with two male occupants carrying a large quantity of cannabis, the Defendant officers still did not have reasonable suspicion to stop the vehicle. Officer Lucas testified that he had never spoken with the anonymous caller before, and accordingly, he had no way of knowing the caller's basis of knowledge or his reliability.

The information provided by the alleged anonymous caller in this case does not even begin to approach the level of detail provided either in *J.L.* or *White.* The caller did not describe the occupants with any specificity, did not give a starting location of the vehicle or an ending location. The caller did not offer any explanation as to the basis of his knowledge or his source of information. The caller only gave the most generic description described the vehicle and said that it would be traveling in the vicinity of two very busy thoroughfares during rush hour. Further, the defendants did not observe any suspicious behavior on the part of Galvan or his passenger, and pulled over the

vehicle based only on the alleged anonymous tip. Even if crediting the defendants with the most specific version they gave of the alleged anonymous call, the information therein did not alone give the officers reasonable suspicion to stop the vehicle. Therefore, Plaintiff requests that this Honorable Court enter judgment as a matter of law in favor of Plaintiff on his claim that he was detained without reasonable suspicion.

### B. Search of Vehicle and Arrest

Even if the Defendants Lucas and Norberg had satisfied themselves that they had suspicion enough to stop the vehicle driven by Galvan on December 30, 2002, they did not then have authority to search the back of the truck and to arrest the Plaintiff.

The United States Supreme Court has held that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions." *Katz v. United States,* 389 U.S. 347, 357 (1967). While there is an exception for a search incident to a lawful arrest, the Supreme Court in *Chimel v. California,* 89 S.Ct. 2034, 2040 (1969) held that such a search may only include the "arrestee's person and the area 'within his immediate control' – construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence. *Id.* at 2040. Absent the possibility that an arrestee has a weapon within his reach or may be able to destroy evidence, the search-incident-to-arrest exception does not apply, and the search is therefore unreasonable under the Fourth Amendment. *Arizona v. Gant,* 129 S.Ct. 1710, 1716 (2009).

Here, both defendant officers testified that at the time they searched the vehicle, Galvan and Juan Luna were already outside of the car. According to Lucas and Norberg,

both men were being cooperative and gentlemanly. In fact, Lucas and Norberg did not even feel the need to handcuff Galvan and Luna as they presented no danger. They were standing on the street and were not in reach of anything inside the truck, let alone weapons or evidence. Galvan and Luna presented no safety risk to the officers and had no opportunity to destroy evidence.

Lucas and Norberg would suggest that the discovery of two small baggies of suspect cannabis allegedly found in the cab of the vehicle gives them probable cause to search the rest of the vehicle. As with their testimony regarding the anonymous call, the officers' testimony regarding the discovery and recovery of those small baggies was inconsistent at best. They again contradicted each other, their own previous testimony, and their official reports of the arrest. Officers Lucas and Norberg could not seem to agree on the location of the baggies before they were recovered. They testified that the baggies were kicked over by the passenger-side door, but their written report stated that the baggies were kicked over to the driver-side door. Lucas stated that when he opened the passenger-side door, the baggies fell out of the car, conveniently right into his hand, and one fell to the ground. That account contradicted his previous testimony that they both fell to the ground, and Norberg's previous account that the baggies were recovered from the floor of the truck's cab after Galvan and Luna were removed from the truck.

However, even if this Honorable Court were able to credit the defendants with a particular version of the events that is in their most favorable light, according to *Arizona v. Gant,* they still did not have authority to search the bed of the vehicle given Galvan and Luna's inability to reach into the bed of the truck at any point during the stop. Because the officers' safety was not at risk and Galvan and Luna could not have destroyed any

evidence that may have been in the bed of the truck, Plaintiff requests that this Honorable Court enter judgment as a matter of law in Plaintiff's favor on his illegal search and seizure and false arrest claims.

Lastly, this Honorable Court should enter judgment as a matter of law on Plaintiff's false arrest claim because defendants did not have probable cause to believe that the "plant material" in the back of the truck was cannabis. Officers Lucas and Norberg decided that the material was cannabis before even getting a good look, feel, and smell of the material. Although Lucas claims that the plant material had the distinct "pungent odor" of cannabis, such a claim presents an impossibility. Hay does not and cannot smell like cannabis. In their zeal to make a major drug bust for which they would receive at least informal accolades and that the local media were called to witness, Officer Lucas and Norberg ignored all evidence that the material was not cannabis. Officer Norberg, Sergeant Casey, and Lieutenant Porebski all testified that they had their doubts that the material was cannabis and not hay, as Galvan repeatedly insisted, but they all dismissed their doubts at Officer Lucas's insistence. They deferred to Officer Lucas's opinion as he was an officer with vast experience in narcotics. Neither Officer Lucas nor Officer Norberg even bothered to contact any representative of St. Wenceslaus church, where Galvan and Luna insisted the hay had come from. As a result of the officers' "mistake", Galvan spent 23 days in Cook County Jail. Even after the laboratory results were delivered, three days after the arrest, neither of the officers, nor anyone else in the Chicago Police Department made any attempt to make sure Galvan was released from custody. Because no reasonable person would believe the plant material in the bed of the

truck was cannabis instead of hay, this Honorable Court should enter Judgment as a matter of law in Plaintiff's favor on his false arrest claim.

### III.     MOTION FOR A NEW TRIAL

Under Rule 59, the District Court has the discretionary authority to grant a new trial. *Miksis v. Howard,* 106 F.3d 754, 757 (7th Cir. 1997). The District Court is in a unique position to view the evidence and the course of the trial. *Id.* The District Court has the power to grant a new trial based on its appraisal of the fairness of the trial and the reliability of the jury's verdict. *Gray v. Bicknell,* 86 F.3d 1472, 1480 (8th Cir. 1996). A new trial may be granted if the verdict is against the clear weight of the evidence, the damages are excessive, or the trial was unfair to the moving party. *Miksis v. Howard,* 106 F.3d 754, 757 (7th Cir. 1997).   In granting a motion for a new trial, "the district judge may set aside the verdict even though there is substantial evidence to support it. *Foster v. Continental Can Corp.,* 101 F.R.D. 710, 713 (D.C.Ind., 1984), *citing Hampton v. Magnolia Towing Co.,* 338 F.2d 303 (5th Cir. 1964); *Isley v. Motown Record Corp.* 69 F.R.D. 12 (S.D.N.Y. 1975).

The jury verdict in this matter was against the manifest weight of the evidence. As discussed at length above, Officers Lucas and Norberg's testimony regarding first the alleged anonymous call and then the alleged discovery of two small baggies of suspect cannabis found in or around the truck Galvan was driving was incredible and contradictory.

This Honorable Court properly instructed the jury regarding reasonable suspicion to stop a vehicle based on an anonymous tip as follows:

> In order to stop a vehicle without a warrant, a police officer
> must have a reasonable suspicion to believe that a crime

has been or is being committed by an occupant of the vehicle. For purposes of determining whether the standard of reasonable suspicion has been met, Norberg and Lucas claim that they stopped Galvan's vehicle in reliance on a an anonymous tip that they say Lucas had received earlier that day.

In determining whether an informant's tip establishes a reasonable suspicion on which to stop a vehicle without a warrant, you should consider the "totality of the circumstances." For that purpose the following factors are considered highly relevant although not exhaustive: that informant's veracity, reliability and basis of knowledge. Unlike a tip from a known informant whose reputation can be assessed and who can be held responsible if his statements turn out to be fabricated, an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity. There are however circumstances under which an anonymous tip, suitably corroborated, has enough indications of its reliability to provide reasonable suspicion to make an investigatory stop of a vehicle.

Applying that instruction to the evidence adduced at trial, the jury verdict was against the manifest weight of the evidence. The testimony at trial established that Officer Lucas and Officer Norberg had no knowledge of the informant's veracity, his reliability or his basis of knowledge. Officer Lucas testified that he had never spoken with the alleged anonymous caller prior to December 30, 2002. Lucas testified that he does not know if the anonymous caller had ever previously provided any information, reliable or otherwise to any of his brother officers. Furthermore, Officer Lucas testified that the alleged caller did not provide any information about his basis of knowledge about the truck, its path of travel, the occupants or any of its contents, including the suspect narcotics. There was no evidence from which the jury could reasonably find that the alleged anonymous tip was "suitably corroborated" or reliable enough to provide the

defendants with reasonable suspicion as defined in the instruction above. Plaintiff Galvan is entitled to a new trial on his illegal search and seizure claim.

Similarly, the jury's verdict on Galvan's false arrest claim was also against the manifest weight of the evidence. As was discussed above in Section II, the defendants' testimony at trial regarding their discovery of two small baggies of suspect cannabis in the cab of the truck does not add up. The officers' testimony and their official reports were inconsistent in the recounting of where in the cab the baggies were found and from where they were recovered. In the official police report, Officer Lucas wrote that the passenger kicked the baggies over to the driver's side door, and that when Lucas opened the passenger side door, the bags fell to the ground. It is physically impossible for baggies over by the driver's side door to then fall out of the passenger-side door. The evidence at trial also showed that the smaller baggies of suspect cannabis were not received by the lab until well after the large quantity of suspect cannabis tested negative.

The officers both testified that they stopped the truck that Galvan was driving because they wanted to see what was in the back. The evidence and testimony adduced at trial make clear that the officers understood that they had to have a lawful reason to search the back of the truck, and they testified that finding the cannabis in the cab of the truck allowed them to lawfully search the entire truck. While the Supreme Court in *Arizona v. Gant,* 129 S.Ct. at 1716 states that such a search is not lawful, the manifest weight of the evidence showed that the officers did not find the smaller bags of cannabis in the truck and instead planted them as a means to search the bed of the truck. Plaintiff should be granted a new trial on his false arrest claim.

11

Finally, Plaintiff should be granted a new trial on his claims because he was unfairly prejudiced when he was not allowed to question Officer Lucas about his complaint history and to introduce Plaintiff's exhibit 35 into evidence. (See Plaintiff's Exhibit 35, attached hereto). Officer Lucas at trial extolled himself as a good, hardworking and honest police officer, thereby putting his character at issue. He also testified that his actions in this matter were merely a mistake. Plaintiff's counsel requested at sidebar to question Officer Lucas about his complaint history as a police officer with the Chicago Police Department and moved to admit Plaintiff's exhibit 35 into evidence. Plaintiff should have been able to question Officer Lucas about his many CR complaints, a number of which allege constitutional violations similar to those complained of by Galvan: search of premise/vehicle without warrant, illegal arrest, improper inventory procedures. Defendants were able to testify and defense counsel to argue that Galvan's arrest was just a mistake, which sometimes happen because police officers have to "cast a wide net" to catch criminals. Plaintiff was unduly prejudiced by not being allowed to question Lucas about his complaint history and admit into evidence plaintiff's exhibit 35 to show that Galvan's arrest was no mistake and as evidence of Lucas' intent. Plaintiff's motion for a new trial should be granted.

## CONCLUSION

WHEREFORE, Plaintiff Manual Galvan, by and through his attorneys, John P. DeRose & Associates, respectfully request that this Honorable Court grant him judgment as a matter of law in the above-captioned cause or in the alternative, a new trial.

Respectfully submitted,

S/ John P. DeRose

John P. DeRose

John P. DeRose & Associates
15 Spinning Wheel Road
Suite 428
Hindsale, Illinois  60521
(630) 920-1111